EcIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JANICE LAURIE BLUE                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO.: 1:15-CV-129-SAA

COMMISSIONER OF SOCIAL SECURITY                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff Janice Laurie Blue has appealed under 42 U.S.C. § 405(g) the decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI . Docket 7, p. 202-212. Blue filed her applications on December 5, 2011, asserting an onset date of July 15, 2010. Docket 7, p. 202, 206. At the hearing in front of the ALJ on July 13, 2013, plaintiff's counsel moved to amend the onset date to October 30, 2009, and the ALJ granted the motion. Docket 7, p. 58. The Commissioner denied Blue's claim initially and on reconsideration. Docket 7, p. 132, 143. Blue challenged the denial of benefits and filed a request for a hearing before an Administrative Law Judge (ALJ). Docket 7, p. 149. She was represented by an attorney at the administrative hearing on July 31, 2013. Docket 7, p. 53-110. The ALJ issued an unfavorable decision on January 31, 2014. Docket 7, p. 26-52. The Appeals Council denied her request for review. Docket 7, p. 1-5. Plaintiff timely filed the instant appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

1

Plaintiff was born on April 14, 1959, was 50-years-old on the date of the amended alleged onset date and was 54-years-old on the date of the hearing before the ALJ, both of which are classified as "closely approaching advanced age." Docket 7, p. 93. However, when the ALJ issued his unfavorable decision on January 31, 2014, plaintiff was eight weeks away from her 55th birthday, at which time her classification would have changed to one of "advanced age" under the Medical-Vocational Guideline (Grid) Rules. Plaintiff has a college education and was previously employed as (1) census enumerator – light exertional level, unskilled; (2) security guard – light exertional job, semiskilled; (3) office clerk – light exertional level, semiskilled; (4) technical support supervisor – sedentary exertional level, skilled; (5) tax preparer – sedentary exertional level, semiskilled; and (6) merchandiser – medium exertional level, skilled. Docket 7, pp. 93-94. Plaintiff contends she became disabled before her application as a result of psoriatic arthritis, degenerative disc disease, and lumbar and cervical radiculopathy. Docket 7, p. 254.

The ALJ found that the plaintiff had "severe impairments" of back and neck disorders, a psoriatic disorder, depressive disorders, and polysubstance abuse and dependence, but that the impairments did not meet or equal a listing impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket 7, p. 32. He first found that *with* her polysubstance abuse the plaintiff retained the Residual Functional Capacity (RFC) to:

> perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She can occasionally climb, balance, stoop, crouch, kneel, and crawl. The claimant at present regarding mental issues is unable to maintain mental attention and concentration for two-hour periods, she is unable to interact with supervisors or co-workers, and she is unable to deal with work stresses.

Docket 7, p. 34.

The ALJ then went through the five-step sequential process for a second time and issued

2

a second RFC, concluding that *if plaintiff ceased her polysubstance abuse*, she

> at present would retain the physical residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk for six hours in an eight-hour workday. She could occasionally climb, balance, stoop, crouch, knee, and crawl. The claimant regarding mental issues if she ceased the substance abuse would retain the ability to understand and follow directions adequately to complete routine repetitive tasks for at least simple work for two-hour blocks of time in an eight-hour day. She would be capable of at least a basic level of interaction with co-workers but would probably function better in a work environment with limited interaction with the general public. She could adapt to work changes if gradual, infrequent, and not major in scope and with these modifications she could complete a workweek without excessive interference from psychological issues.

Docket 7, p. 39.

In light of testimony by a vocational expert at the hearing, the ALJ found plaintiff capable of performing jobs that exist in significant numbers in the national economy, including a laundry folder, warehouse checker and production inspector *if* the claimant stopped her poly-substance abuse. Docket 7, p. 45. Thus, he concluded, the plaintiff was not disabled.

Plaintiff alleges the ALJ erred in (1) finding that alcohol or drugs were a material factor in the plaintiff's disability; (2) effectively rejecting the treating physician opinion of Dr. Parsons; (3) evaluating of the materiality of plaintiff's alleged poly-substance abuse; and (4) failing to recognize that even under his RFC the plaintiff would have met the medical vocational guidelines for disability shortly after his decision. Docket 13, pp. 7, 11, 16, 17.

Although plaintiff raises these four issues as grounds for appeal, the undersigned is of the opinion that the ALJ improperly relied upon the opinion of a non-examining reviewing physician instead of affording proper weight to the opinions of the treating and examining physicians, and also "played doctor" in order to reach his second RFC. The court finds that the decision of the

3

ALJ is not supported by substantial evidence and did not uphold proper legal standards. This case is remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## II.  EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, is charged with working through a five-step sequential evaluation process.[1] The burden to prove disability rests upon plaintiff through the first four steps of the process, and if plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[2] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit [] [her] physical or mental ability to do basic work activities..."[4] At step three the ALJ must conclude that the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, she is capable of performing other work.[6] If the Commissioner proves other work exists which

---

[1] *See* 20 C.F.R. § 404.1520; 426.920.

[2] *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. § 404.1520(b); 416.920(b).

[4] 20 C.F.R. § 404.1520(c); 416.920(c).

[5] 20 C.F.R. § 404.1520(d); 416.920(e).

[6] 20 C.F.R. § 404.1520(g); 416.920(g).

4

plaintiff can perform, plaintiff is then given the chance to prove that she cannot, in fact, perform that work.[7]

### III. STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.[8] In making that determination, the court has the responsibility to scrutinize the entire record.[9] The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds the evidence leans against the Commissioner's decision.[11] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side.[13] The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's

---

[7] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[8] *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[9] *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)

[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[12] *Crowley*, 197 F.3d at 197 (citation omitted).

[13] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

conclusions.[14] "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."[15]

## VI. DISCUSSION

The ALJ evaluated the claim using the Social Security Administration's five-step evaluation process. 20 C.F.R. 404.1520(a); 20 C.F.R. 416.920(a); *see also* Docket 7, pp. 31-35. There, the ALJ determined that plaintiff met the insured status requirements of the Social Security act through December 31, 2013 and had not engaged in substantial gainful activity since her alleged onset date. Docket 7, pp. 31-32. He also found that plaintiff suffered from "severe" impairments of back and neck disorders, psoriasis, depressive disorders, and polysubstance abuse and dependence. Docket 7, 32. At step three, the ALJ concluded that claimant's impairments did not meet or medically equal the severity of a listed impairment. Docket 7, p. 32. At step four he found plaintiff had the residual functional capacity to perform a range of light work but was unable to perform any of her past relevant work. Docket 7, pp. 34-36. At step five, the ALJ initially determined that no jobs existed in significant numbers in the national economy that the plaintiff could perform. Docket 7, p. 41.

As required by the applicable regulations, 20 C.F.R. §§ 404.1535, 416.935, the ALJ then went through the five-step process for a second time, evaluating what RFC plaintiff would be assigned if she stopped her polysubstance abuse. He found that if she did so, the remaining limitations would still qualify plaintiff has having a "severe" impairment or combination of

---

[14]*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197.

[15]*Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

impairments, but at step three he concluded that if the plaintiff stopped the polysubstance abuse, her impairments would not meet or medically equal the severity of a listed impairment. Docket 7, p. 42. At step four he found that without her polysubstance abuse plaintiff would have the RFC to perform a range of light work and was mentally capable of following directions and performing routine repetitive tasks, though she was still unable to perform any of her past relevant work. Docket 7, p. 43, 49. At step five, the ALJ determined that if plaintiff stopped her polysubstance abuse, a significant number of jobs exists in the national economy that she could perform, and she therefore was not disabled. Docket 7, p. 50.

Plaintiff argues on appeal that the ALJ improperly discounted the opinion of her treating physician, Morris Parsons, M.D., in violation of 20 C.F.R. § 404.1527. Docket 13, p. 11. Dr. Parsons submitted a medical source statement on July 19, 2013, assessing the plaintiff with the ability to stand and walk for only two hours in an 8-hour work day and to sit for only two hours in an 8-hour work day. Docket 7, p. 793. Dr. Parsons later expressed his opinion that plaintiff would experience the same diagnoses and limitations contained in his medical source statement even in the absence of drug and alcohol abuse. Docket 7, p. 800.

Plaintiff claims the ALJ failed to apply proper legal standards when he elected to assign her treating physician's opinion little weight, instead giving significant weight to Dr. Glenda Scallorn's mental residual functional capacity assessment. Docket 7, p. 447. Dr. Scallorn is a state agency reviewing physician who concluded on January 5, 2010 (three and a half years before Dr. Parsons' medical source statement and without examining the plaintiff) that plaintiff had some moderate mental limitations but retained the ability to understand and follow directions adequately to complete routine repetitive tasks for at least simple work for two-hour

7

blocks in an eight-hour day. Docket 7, p. 449. The Commissioner responds that the ALJ's decisions regarding the relative weights given to these opinions were substantially justified because Dr. Parsons's opinion was not supported by his own medical records, and the dramatic discrepancies between his July 19, 2013, medical source statement and the objective medical evidence provided good cause for the ALJ's decision to discount it. Docket 14, p. 14.

The law regarding treatment of an opinion from a treating source or treating physician is clear. Unless there is contrary medical evidence, an ALJ must afford a treating physician's opinion significant weight in making his determination of disability. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Although a treating physician's opinion is entitled to great weight, an ALJ can discount the weight of that opinion for good cause. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). "[A]n ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Before declining to give a treating physician's opinion controlling weight there are several factors an ALJ must consider:

> (1) the physicians length of treatment of the claimant;
> (2) the physician's frequency of examination;
> (3) the nature and extent of the treatment relationship;
> (4) the support of the physician's opinion afforded by the medical evidence of record;
> (5) the consistency of the opinion with the record as a whole;
> (6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456; *see also* 20 C.F.R. § 404.1527(d)(2). When an ALJ elects not to grant a treating physician's opinion controlling weight he must provide appropriate explanations. *See Newton*, 209 F.3d 448; *see also* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p. Furthermore,

the ALJ must evaluate the medical opinions with specific consideration of both the *examining relationship* and the *treatment relationship* between the medical professional and the patient. 20 C.F.R. § 404.1527(c).[16]

In this case, the ALJ reviewed Dr. Parsons's records and medical source statement from July 19, 2013 and declared his reasons for not following his opinion. Docket 7, pp. 43-44. However, the ALJ did not follow the criteria laid out in *Newton* or 20 C.F.R. § 404.1527(c). Instead, he considered Dr. Parsons's opinion and discussed the records but ultimately made conclusory determinations that the doctor's opinion was not supported by the objective medical evidence or by the doctor's "own medical records." Docket 7, pp. 43-44.

---

[16] 20 C.F.R. § 404.1527(c). More specifically, the regulations provide the following explanation for how those factors must be evaluated:

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion . . . is well-supported . . . we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section . . . in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
>
> (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinions. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
>
> (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

9

The ALJ did not apply the proper legal standards, and his decision is therefore not substantially justified. In declining to give the plaintiff's treating physician controlling weight or even significant weight without performing the required analysis under *Newton*, the ALJ committed reversible error which requires remand. *Newton*, 209 F.3d at 456.

Having found that the ALJ improperly considered and weighed the opinion of Dr. Parsons, the court now turns to the issue of whether the ALJ "played doctor" for purposes of formulating his second RFC. Even though plaintiff did put on medical proof that she would be disabled in the absence of her polysubstance abuse, the ALJ relied upon his own lay interpretation of the medical records to reach his second RFC. No medical opinion in the record provides the limitations that the ALJ established in his second RFC determination. Even though the ALJ's opinion did not have a basis in any medical finding which supports his conclusions regarding plaintiff's capabilities, and even though the plaintiff raised this important detail in her memorandum brief, the Commissioner continues to do the same thing in this court that the ALJ did – take on the role of a physician and try to reach a conclusion as to plaintiff's capabilities from the raw medical data.

Certainly, the responsibility of determining the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); in making this determination he must consider all the evidence in the record and determine the plaintiff's ability despite her physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, he is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*,

402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). The ALJ may not establish physical limitations or lack of those limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172. F.3d at 35.

The court has examined the record and, despite the ALJ's inclusion of these findings in his RFC, cannot locate evidence that any treating or examining physician ever stated plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours in an 8-hour workday, occasionally climb, balance, stoop, crouch, knee, and crawl, and retain the ability to understand and follow directions adequately to complete routine repetitive tasks for at least simple work for 2-hour blocks of time in an 8-hour day. The ALJ clearly has meticulously "cherry-picked" parts of several doctors' assessments to create his own RFC, ignoring large swaths of medical opinions and findings that did not suit his own opinion. The ALJ's RFC is tantamount to the ALJ "playing doctor," a practice forbidden by law. *See, e.g. Rohan v. Chater*, 97 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

As indicated by the Fifth Circuit, "an ALJ may not rely on [his] own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). This appears to be exactly what the ALJ did in this case. In direct contradiction to the applicable case law, the ALJ established limitations without any

medical proof to support those limitations, then, using those unsupported limitations, reached an RFC based upon his own extrapolation of the medical records as to plaintiff's ability to work, in the process contradicting medical opinions of multiple medical experts.  This process produced an improper RFC and ultimately an improper evaluation of plaintiff's ability to perform various jobs by the VE, not to mention further delay and expense to all involved in this action.

## IV.  DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand for further consideration or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the plaintiff that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff.  Social Security Law & Practice, §55.77, p. 129.  In this case, the plaintiff has been very patient.  She has been seeking benefits through the administrative process for nearly <u>seven years</u>.  The evidence in this case is clear.  The plaintiff's treating physician concluded that, even in the absence of polysubstance abuse, the plaintiff would still be disabled.  Docket 7, p. 800.  The court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review.  This case is remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V.  PLAINTIFF'S REMAINING ARGUMENTS

Because the court has determined that the plaintiff is disabled under the Social Security Act, and this action is being remanded for the sole purpose of determining the amount of benefits

to be awarded to the plaintiff under the Act, the court need not address the merits of the plaintiff's remaining arguments at this time.

## VI.  **CONCLUSION**

For the foregoing reasons, the court finds that the decision of the ALJ is not supported by substantial evidence and did not uphold proper legal standards.  This case is remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act. A final judgment in accordance with this memorandum opinion will issue this day.

Respectfully submitted, this the 12th day of April, 2016.

/s/ S. Allan Alexander  
UNITED STATES MAGISTRATE JUDGE